Aaron Johnstun (13070)
JOHNSTUN LAW, LLC
256 North Main Street Suite D
Alpine, Utah 84004
Office: (801) 980-5300
aaron@johnstunlaw.com
*Attorney for LSPN Pro, LLC*

Brian A. Williamson (Pro Hac Vice Pending)
CALLAGY LAW
2550 W. Union Hills Drive, Ste. 350-341
Phoenix, AZ 85027
Telephone: (602) 894-6900
Email: Bwilliamson@callagylaw.com
*Attorney for LSPN Pro, LLC*

IN AND FOR THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| LSPN PRO, LLC,<br><br>Plaintiff**,**<br><br>vs.<br><br>LEGACYSHIELD SOLUTIONS, INC., THE SAVINGS BANK MUTUAL LIFE INSURANCE COMPANY OF MASSACHUSETTS, LEWIS GOLDMAN, RAY RAMIREZ, GARCIA & SAHNI, LLC, LORNA GARCIA, and VINEET SAHNI,<br><br>Defendants**.** | **COMPLAINT**<br><br>Case No. _____<br><br>Judge _____<br><br><br>(JURY DEMANDED) |

Plaintiff, LSPN Pro, LLC ("Plaintiff" or "LSPN"), brings this action and hereby alleges as follows:

**PRELIMINARY STATEMENT**

1.     Plaintiff, LSPN Pro, LLC brings this action to recover against Defendants for claims related to fraudulent and deceptive business practices causing Plaintiff significant monetary damages.

2.     Defendants, either through wrongful accounting or outright fraud misappropriated funds from Plaintiff and conspired to circumvent Plaintiff's business opportunities for their own.

3.     After years of business dealings, Defendants LegacyShield Solutions, Inc. and The Savings Bank Mutual Life Insurance Company of Massachusetts represented that they could be a financing partner for Plaintiff so that Plaintiff might offer a monthly payment plan option ("Legacy 4 Life") for Plaintiff's estate planning clients rather than a one-time up-front payment for legal services to make planning more affordable and accessible.

4.     The Parties agreed to a certain fee split on client payments for the Legacy 4 Life plan. The client payments for the Legacy 4 Life plan were processed through Defendant companies, LegacyShield Solutions, Inc. ("LegacyShield"") and their parent company, The Savings Bank Mutal Life Insurance Company of Massachusetts ("SBLI").

5.     Defendants LegacyShield and SBLI intentionally and deceptively withheld hundreds of thousands of dollars of monies owed to Plaintiff. Defendants LegacyShield and SBLI attempted to conceal their improper accounting practices when confronted by Plaintiffs.

6.     As a result of Defendants LegacyShield's and SBLI's lies, deceptive business practices and refusal to return wrongfully withheld money to Plaintiff, Plaintiff suffered cash flow issues, incurred debt and was unable to pursue lucrative business opportunities.

7.     Plaintiff was forced to sell the majority of their assets at a significantly discounted price as the company was devalued due to cashflow issues and debt caused by Defendants LegacyShield and SBLI's wrongful failure to pay monies due and owing to Plaintiff.

8.     Further, Defendants Garcia & Sahni, LLP and their principals, attorneys Lorna Garcia and Vineet Sahni, conspired with Defendants LegacyShield and SBLI and their agents Defendants Lewis Goldman and Ray Ramirez to circumvent Plaintiff, interfere with Plaintiff's business relationships, and appropriate Plaintiff's business for themselves and their coconspirators.

9.     Plaintiff now rightfully seeks to recover monetary damages from Defendants for their illegal business practices and misconduct.

## **PARTIES**

10.     Plaintiff, LSPN Pro, LLC ("Plaintiff") is a Utah limited liability company, with a principal place of business located at 100 North State Street, Lindon, Utah 84042.

11.      Glen Wagstaff, is the owner and principal of Plaintiff and is a resident of Utah, residing in Pleasant Grove, Utah.

12.     Upon information and belief, Defendant, LegacyShield Solutions, Inc. is a Delaware limited liability company with its principal places of business at 1 Linscott Road, Woburn, MA 01801 and 830 A1A North, Suite 13-139, Ponte Vedra Beach, FL, United States, 32082.

13.     Upon information and belief, Defendant The Savings Bank Mutual Life Insurance Company of Massachusetts ("SBLI") is a Massachusetts corporation with its principal place of business at 1 Linscott Rd, Woburn, MA 01801.

14.    Upon information and belief, Defendant Lewis Goldman is an individual residing in New Rochelle, New York.

15.    Upon information and belief, Defendant Ray Ramirez is an individual residing in Vancouver, Washington.

16.    Upon information and belief, Defendant Garcia & Sahni, LLP is California limited liability partnership with its principal place of business at 2077 Gold Street, San Jose, CA 95002.

17.    Upon information and belief, Defendant Lorna Garcia is an individual residing in San Jose, California.

18.    Upon information belief, Defendant Vineet Sahni is an individual residing in Fremont, California.

## JURISDICTION AND VENUE

19.    This dispute is between citizens of different States, namely Utah, Delaware, Florida, California, New York, Washington, and Massachusetts and the amount in dispute between the parties involves a claim of damages by Plaintiff in excess of $75,000, exclusive of interest and costs; therefore, it meets the jurisdictional requirements of this this Court pursuant to 28 U.S.C. § 1332(a).

20.    Venue is correct herein because Plaintiff and its principal are residents of Utah and Defendants transacted business within the State of Utah. Indeed, the majority of the communications and transactions in question as set forth herein have occurred in Utah.

## FACTUAL BACKGROUND

### A.  LSPN Pro, LLC

21.    Plaintiff, LSPN Pro, LLC ("Plaintiff") is a limited liability company based in Utah. The owner and principal of Plaintiff is Mr. Glen Wagstaff.

22.    Plaintiff is a company dedicated to providing outside attorney services to individuals and businesses through independently contracted attorneys for estate planning.

23.    As part of Plaintiff's business model, Plaintiff has contracted with a law firm, Inter Vivos, PLLC, to provide the legal services required by Plaintiff's clients.

24.    Pursuant to its agreement with Plaintiff, Inter Vivos, PLLC has contracted with other law firms and attorneys to grow the reach of and service capacity for Plaintiff's services.

25.    Plaintiff was wildly successful, having partnered with several companies soliciting individuals and businesses for legal services related to estate planning and, in coordination with Inter Vivos, PLLC, developing a proprietary, extensive network of legal service providers to meet the needs of Plaintiff's customers.

26.    Plaintiff's value was estimated to be approximately $10,000,000 prior to 2022 and prior to Defendants' damaging actions.

**B.  LegacyShield, SBLI and the Master Services Agreement**

27.    LegacyShield is a Delaware limited liability company that focuses on providing a range of services including, but not limited to assisting individuals and businesses obtain insurance and financial and estate planning services.

28.    Plaintiff first partnered with LegacyShield to assist them with marketing messaging, product pricing, and the software for do-it-yourself ("DIY") estate planning.

29.    Initially, the relationship between Plaintiff and LegacyShield was mutually beneficial. However, over time, LegacyShield's sales and reputation began to slump due to poor management decisions and inexplicably ending relationships with sales partners.

30.     As a result of LegacyShield's deteriorating situation, Plaintiff's relationship with LegacyShield cooled significantly and Plaintiff sought to develop relationships with other companies.

31.     In or about 2020, LegacyShield was acquired by Defendant SBLI. Upon information and belief, SBLI became the parent company of LegacyShield.

32.     At all times relevant to this action, Defendant LegacyShield and Defendant SBLI shared a common President and CEO, specifically James A. Morgan.

33.     Upon information and belief, James A. Morgan, as President and CEO of both Defendants LegacyShield and SBLI, operated and acted on behalf of Defendants LegacyShield and SBLI such that no true separation of identity existed between Defendants LegacyShield and SBLI.

34.     Upon information and belief, at all times relevant to this action, Defendant LegacyShield and Defendant SBLI shared a common office location at 1 Linscott Road in Woburn, Massachusetts.

35.     Through James A. Morgan and other agents, Defendants LegacyShield and SBLI acted with unity of interest such that there was no practical distinction between one entity and the other as to all of the actions alleged herein.

36.     Defendant Lewis Goldman is an SBLI outside consultant in charge of managing LegacyShield. Defendant Goldman approached Plaintiff and indicated that Defendants were interested in re-engaging with Plaintiff and were willing to explore any options that could help them get sales numbers up again.

37.    Plaintiff initially was reluctant to re-new their relationship with LegacyShield due to its prior precarious situation and because LegacyShield's reputation in the industry remained very negative.

38.    Defendant Goldman worked extensively to re-new the business relationship between Plaintiff and LegacyShield, by knowingly and intentionally misleading Plaintiff about Defendants' business intentions and capabilities, through materially false misrepresentations.

39.    For instance, through Defendant Goldman, LegacyShield falsely represented that they, and by extension Defendant SBLI, could be a financing partner for Plaintiff so that Plaintiff could offer a monthly payment plan option for Plaintiff's clients rather than a one-time up-front payment for legal services to make planning more affordable and accessible.

40.    The joint plan was plan was called "Legacy 4 Life."

41.    Ultimately, in reliance upon Defendant Goldman's misrepresentations, Plaintiff decided to re-start a business relationship with Defendants LegacyShield and SBLI and invested/diverted significant resources into the relationship.

42.    On or about September 13, 2022, Plaintiff and LegacyShield entered into a Master Services Agreement ("MS Agreement").

43.    Specifically, The MS Agreement -Exhibit "B" defined LegacyShield's scope of work which included, but was not limited to processing client payments and division of

payments:

## EXHIBIT B

### STATEMENT OF WORK

LEGACYSHIELD SHALL PROVIDE THE FOLLOWING SERVICES IN
CONNECTION TO THIS AGREEMENT:

- Compensation Payments to Agents
- Providing Vault Software Platform and Associated features to clients of monthly
  plan
- Support for Agent compensation matters
- Technical support for LegacyShield software platform
- Payment processing of client payments
- Division of payments between LegacyShield, its parent and Service Provider

44.    Exhibit "C" of the MS Agreement established the payment schedule for the

Legacy 4 Life Plan:

**EXHIBIT C**

**FEE SCHEDULE FOR MONTHLY PAYMENT PLANS**

The anticipated product will be branded as "Legacy For Life", will feature the LegacyShield Vault in marketing materials and descriptions, and will consist of 24 monthly payments of $50 with an optional annual renewal for maintenance plan access.

Initial fees to be paid upon client enrollment will be as follows:
- $200 Agent Compensation
- $100 Payment to LSPN for Mobile Notary Service

In the 13th month of client payment, fees will be paid as follows:
- $75 Payment to LSPN for Document Preparation
- $80 Payment to LSPN for Attorney Compensation
- $75 Payment to LSPN for Deed Preparation
- $40 Payment to LSPN for Software Costs
- $30 Payment to LSPN for Sales Staff

As monthly client payments are made profits will be distributed as follows:
- estimated at $16.67 Payment to SBLI, LegacyShield's parent
- estimated at $16.67 Payment to LegacyShield
- estimated at $16.67 Payment to LSPN

Monthly Maintenance Plan payments continuing after month 24 of client payment shall be divided as follows:
- $5 Agent Compensation
- $3 LegacyShield Software License
- $10 Payment to LSPN for Funeral Concierge Service
- $3 Payment to LSPN for Legacy Video Platform License
- $5 Payment to LSPN for Estate Admin Concierge Service
- $12 Profits to LegacyShield
- $12 Profits to LSPN

45.    In the  MS Agreement, the Parties agreed that LegacyShield would retain an initial $50.00 payment on plans where the client paid initially $50.00 and then the remaining balance of the plan within 30 days.  The remaining monies paid by the client would be released to Plaintiff. If a client continued on a payment plan and did not pay the full balance within 30 days, then the Parties would share the profits from that client's account.

46.     On the same day they signed the MS Agreement (on or about September 13, 2022), the Parties also signed a comprehensive Mutual Non-Disclosure Agreement (the "NDA") whereby Defendants agreed to prevent the disclosure, unauthorized use and dissemination of Plaintiff's defined confidential proprietary information.

### C.  Defendants intentionally and wrongfully withhold monies due to Plaintiff.

47.     On or around November 1, 2023, at LegacyShield's request and after assurances that the system would process early payoff payments properly, the Parties began running all payments for basic estate service plans governed by the MS Agreement through the LegacyShield payment portal, which was wholly controlled by Legacy Shield.

48.     Thereafter, when LegacyShield made payments to Plaintiff, the payments were not itemized, but rather paid in aggregated amounts, making it impossible for Plaintiff to apply payments to particular sales, or effectively audit LegacyShield's payment performance. This continued despite Plaintiff's repeated written requests made over several months.

49.     LegacyShield payments under the MS Agreement from November 2023 through January 2024 unexpectedly plummeted, and because so much of Plaintiff's revenues were tied to LegacyShield payments, Plaintiff's profits dramatically dropped, causing Plaintiff to operate at a significant, unsustainable loss.

50.     In the face of the imminent collapse of its business, Plaintiff was forced to incur debt, by carrying credit card balances and drawing on its line of credit, and ultimately was forced to sell a majority of its assets due to cashflow issues. The cashflow and incurred debt, Plaintiff would later learn, was unnecessary, because it all was caused by LegacyShield's misappropriation of funds owed to Plaintiff, which was intentional from the beginning, and based on an orchestrated plan of deception.

10

51.     Upon information and belief, SBLI consultant, Lewis Goldman conspired, planned and executed a scheme to defraud Plaintiff by inducing a renewal of the business relationship between LegacyShield and Plaintiff for the purpose of intentionally and wrongfully withholding future monies that would be owed to Plaintiff.

52.     Defendants' deceptive scheme worked because through it they conspired to and in fact hid sums due to Plaintiff through shielded accounting practices, which continued unabated for months, and Defendants and their employees deliberately worked to conceal the fact that money was being improperly withheld from Plaintiff.

53.     Ultimately, when Plaintiff demanded a full audit of payments received by Defendants, Defendant Lewis Goldman reluctantly directed Plaintiff to SBLI's in-house counsel.

54.     SBLI's counsel thereafter essentially admitted that monies had been wrongfully withheld from Plaintiff by providing accounting documents which clearly demonstrated that monies owed to Plaintiff had been withheld.

55.     Indeed, Plaintiff learned that more than $550,000 dollars was wrongfully withheld by Defendants LegacyShield, SBLI, and their cohorts, which Defendants refused to pay after being confronted by Plaintiff.

56.     On May 1, 2024, Defendant, LegacyShield provided written notice to Plaintiff that they intended to terminate their relationship within 30 days.

57.     Prior to the 30-day termination date, LegacyShield began mass marketing a new estate planning program, improperly using Plaintiff's NDA-protected confidential and proprietary information to launch their new program.

D. **Defendants conspire to circumvent Plaintiff and steal Plaintiff's business relationships.**

   a. **Defendant Ray Ramirez.**

58.    Defendant LegacyShield and all of its contractors and employees were bound by the NDA.

59.    Upon information and belief, Defendant LegacyShield, through its Sales Representative, Defendant Ray Ramirez, conspired, planned and executed the launch and mass marketing of the new estate planning program, improperly using Plaintiff's confidential and proprietary information, which included an organized network of providers ("Plaintiff's IP"), in violation of the NDA.

60.    Defendant Ramirez had access to Plaintiff's IP because he had previously worked for Plaintiff and was intimately familiar with Plaintiff's IP, including without limitation, Plaintiff's business, including Plaintiff's contacts, business associates, attorney network, and other critical aspects of Plaintiff's operations.

**61.**    Defendant Ramirez was bound by a nondisclosure agreement, which contained covenants preventing him from using, disclosing or circumventing the relationships of Plaintiff and, therefore, he had covenanted not to use or disclose Plaintiff's IP, except as authorized by Plaintiff.

   b. **Defendant Garcia & Sahni, LLP.**

62.    Upon information and belief, Defendant Garcia & Sahni, LLP gained access to protected information developed and owned by Plaintiff and used it for the benefit of Defendant LegacyShield to the Plaintiff's detriment.

63.     This access was gained through Defendant Ramirez, who introduced Defendant Garcia & Sahni, LLP and its principals and agents, Lorna Garcia and Vineet Sahni (collectively the firm and its agents are "G&S") to Inter Vivos, PLLC ("Inter Vivos"), the law firm through which Plaintiff's professional network was managed.

64.     The purpose for the introduction was to enable G&S to gain access to Plaintiff IP.

65.     Defendant Garcia & Sahni signed an agreement called an Independent Contractor Attorney Agreement (the "Inter Vivos NDA") with Inter Vivos containing restrictive covenants which precluded the use or disclosure of Inter Vivos' proprietary information, including the Plaintiff IP.

66.     The Inter Vivos NDA was written in part to protect Inter Vivos and its clients from the unauthorized use of its or their protected information, relationships and business.

67.     The Inter Vivos NDA contains certain provisions precluding Defendant Garcia & Sahni, LLP – and by extension its principals and agents Defendants Lorna Garcia and Vineet Sahni – from soliciting Inter Vivos' "Referral Contacts" and from circumventing Inter Vivos' relationship with LegacyShield's attorney network.

68.     Because Inter Vivos' NDA is designed to procure legal services for Plaintiff's customers and many of the essential terms, such as the non-circumvention obligations, are included for the purpose of protecting Plaintiff's interests, Plaintiff is an intended third-party beneficiary of the Inter Vivos NDA.

69.     Restrictive covenant provisions in the Inter Vivos NDA are required by Plaintiff in order to comply with a requirement imposed upon the firm by Defendant LegacyShield, the purpose of which is to prevent precisely the kind of circumvention perpetrated by Defendants.

70.    Upon information and belief, Defendant Ray Ramirez learned of Defendants G&S through his work as an employee of Plaintiff.

71.    Upon information and belief, Defendant Ray Ramirez introduced Defendants LegacyShield and SBLI to Defendants G & S, the latter of whom were part of Plaintiff's attorney network.

72.    With the coordination and support of Defendants LegacyShield and SBLI, Defendants G&S began marketing directly to the Referral Contacts and attorney network which had been established by Plaintiff and Inter Vivos.

73.    Defendants G & S, also have directly marketed to contacts in Plaintiff's database, which was procured for them by LegacyShield.

74.    Defendants G & S have purposefully and deceptively marketed to Plaintiff's contacts as though they were authorized by Plaintiff, even though they were not so authorized and were violating the terms of the Inter Vivos NDA.

75.    Defendants G & S have also failed to make payments for the sales they have procured through these marketing efforts to Inter Vivos, as required.

76.    Upon information and belief, at all times relevant, Defendants G & S' illicit efforts have been aided and supported by Defendants LegacyShield, SBLI, Lewis Goldman, and Ray Ramirez.

**E.  Plaintiff suffered catastrophic damage as a result of Defendants' actions.**

77.    Defendants' conduct stifled Plaintiff's incoming cash flow and choked off Plaintiff's ability to conduct its business.

78.    Defendants' conduct resulted in the circumvention of Plaintiff in the business that Plaintiff had developed and created through years of labor and perseverance.

79.     In order to stop its financial hemorrhaging and resolve its outstanding obligations, Plaintiff was forced to sell most of its assets and value its business at a significantly less amount due to the debt unnecessarily and wrongfully incurred over more than one year.

80.     As a result of Defendants' illegal actions, Plaintiff has been damaged in an amount totaling not less than $10,000,000.

## FIRST CAUSE OF ACTION

(Breach of Contract - Master Services Agreement – Defendants LegacyShield and SBLI)

81.      Plaintiff repeats each and every allegation of the foregoing as if same were set forth herein.

82.     On or about September 13, 2023, Plaintiff, LegacyShield, and SBLI entered into a Master Services Agreement and Mutual Non-disclosure Agreement ("NDA").

83.     The Master Services Agreement and Mutual Non-Disclosure Agreement were both executed by Defendants' President and CEO, James A. Morgan.

84.     Defendants LegacyShield and SBLI had a contractual duty and obligation to properly and accurately process client payments using software and or personnel with appropriate skill and qualifications.

85.     Defendants, LegacyShield and SBLI had a contractual duty and obligation to properly and accurately disburse client payments between themselves and Plaintiff using personnel with appropriate skill and qualifications.

86.     Defendants, LegacyShield and SBLI had a contractual duty and obligation to use appropriate accounting methods and practices to ensure that the division of payment and or profits between themselves and Plaintiffs were accurate.

87.    Defendants, LegacyShield and SBLI had a contractual duty to perform their work pursuant to applicable federal, state and local laws.

88.    Defendant, LegacyShield and SBLI breached their contractual duty and obligation to Plaintiff to properly and accurately process client payments using software and or personnel with appropriate skill and qualifications by inaccurately processing said client payments.

89.    Defendants, LegacyShield and SBLI breached their contractual duty and obligation to Plaintiff to properly and accurately disburse client payments between themselves and Plaintiff using personnel with appropriate skill and qualifications by consistently providing the wrong amount of monies owed to Plaintiff.

90.    LegacyShield and SBLI breached their contractual duty and obligation to use appropriate accounting methods and practices to ensure that the division of payment and or profits between themselves and Plaintiff was accurate by consistently providing the wrong amount of monies owed to Plaintiff.

91.    Defendants, LegacyShield and SBLI breached their contractual duty to perform their work pursuant to applicable federal, state and local laws by intentionally withholding monies owed to Plaintiff.

92.    As a direct and proximate result of the foregoing, Plaintiff has been damaged thereby, and Defendants are responsible to Plaintiff for their damages.

93.    There is a unity of interest and ownership between Defendants LegacyShield and SBLI such that the actions of one were treated as the actions of the other in the course of the parties' dealings and any distinction between the two entities ceased to exist.

94.    Permitting Defendants LegacyShield and SBLI to maintain a fiction of separation would sanction a fraud, promote, injustice, or an inequitable result by allowing that fiction to

shield these entities from their joint misconduct. Therefore, Defendants LegacyShield and SBLI should be held jointly and severally liable for all damages suffered by Plaintiff as a result of Defendants' breach of the Master Services Agreement.

## SECOND CAUSE OF ACTION

(Breach of Contract- Mutual NDA-Defendants SBLI, LegacyShield, Goldman, & Ramirez)

95.    Plaintiff repeats each and every allegation of the foregoing as if same were set forth herein.

96.    On or about September 13, 2023, Plaintiff and Defendant SBLI entered into a Mutual Non-Disclosure Agreement.

97.    Defendant SBLI and, by extension, its subsidiary and agent Defendant LegacyShield, had a contractual duty and obligation to keep Plaintiff's proprietary information confidential and not use Plaintiff's proprietary information in a way inconsistent with and/or not in furtherance with their mutual business interests.

98.    Defendants LegacyShield and SBLI had a contractual duty and obligation to properly supervise and manage their employees, agents, independent contractors and/or consultants to ensure that Plaintiff's proprietary information was not being disseminated or used in a way inconsistent with and or not in furtherance with their mutual business interests. This duty extended to Defendants Goldman and Ramirez.

99.    Defendants SBLI, LegacyShield, Goldman, and Ramirez breached their contractual duty and obligation to Plaintiff to keep Plaintiff's proprietary information confidential and not use Plaintiff's proprietary information in a way inconsistent with and/or not in furtherance with their mutual business interests by using Plaintiff's proprietary information to create and mass- market estate planning program(s).

100.    Defendants SBLI, LegacyShield, Goldman, and Ramirez breached their contractual duty and obligation to Plaintiff to properly supervise and manage their employees, agents, independent contractors and/or consultants to ensure that Plaintiff's proprietary information was not being disseminated or used in a way inconsistent with and or not in furtherance with their mutual business interests by permitting them to use Plaintiff's proprietary information to create and mass marketing estate planning program(s).

101.    As a direct and proximate result of the foregoing, Plaintiff has been damaged thereby, Defendants are responsible to Plaintiff for their damages.

102.    There is a unity of interest and ownership between Defendants LegacyShield and SBLI such that the actions of one were treated as the actions of the other in the course of the parties' dealings, and the duties of one became the duties of the other, and any distinction between the two entities ceased to exist.

103.    Permitting Defendants LegacyShield and SBLI to maintain a fiction of separation would sanction a fraud, promote, injustice, or an inequitable result by allowing that fiction to shield these entities from their joint misconduct. Therefore, Defendants LegacyShield and SBLI should be held jointly and severally liable for all damages suffered by Plaintiff as a result of Defendants' breach of the Mutual Non-Disclosure Agreement.

## **THIRD CAUSE OF ACTION**

(Promissory Estoppel- Defendants SBLI, LegacyShield, & Goldman)

104.    Plaintiff repeats each and every allegation of the foregoing as if same were set forth herein.

105.    Defendants SBLI, LegacyShield, & Goldman made false promises and representations to Plaintiff in a Master Services Agreement, Mutual Non-Disclosure Agreement

and in verbal communications that Defendants had the intentions and capabilities to properly and accurately process client payments and disburse the correct monies owed to Plaintiff.

106. Defendants SBLI, LegacyShield, & Goldman made false promises and representations to Plaintiff in a Master Services Agreement, Mutual Non-Disclosure Agreement and in verbal communications that Defendants had the intentions and capabilities to properly and accurately follow established accounting practices and standards.

107. Defendants SBLI, LegacyShield, & Goldman made false promises and representations to Plaintiff in a Master Services Agreement, Mutual Non-Disclosure Agreement and in verbal communications that Defendants had the intentions and capabilities to keep Plaintiff's proprietary information confidential.

108. Plaintiff reasonably relied on Defendants SBLI, LegacyShield, & Goldman's promises and representations that Defendants had the intentions and capabilities to properly and accurately process client payments and disburse the correct monies owed to Plaintiff by entering into a Master Services Agreement whereby Defendants would be responsible for processing client payments and disbursing monies owed to Plaintiff.

109. Plaintiff reasonably relied on Defendants SBLI, LegacyShield, & Goldman's promises and representations that Defendants had the intentions and capabilities to properly and accurately follow established accounting practices and standards by entering into a Master Services Agreement whereby Defendants would be responsible for accounting for client payments and monies owed to Plaintiff.

110. Plaintiff reasonably relied on Defendants SBLI, LegacyShield, & Goldman's promises and representations that Defendants had the intentions and capabilities to keep Plaintiff's proprietary information confidential by entering into a Master Services Agreement

and Mutual Non-disclosure Agreement whereby Defendants would be responsible for safeguarding and preventing the dissemination of Plaintiff's proprietary information.

111.    Defendants SBLI, LegacyShield, & Goldman's representations were false when made and intended to induce reliance by Plaintiff, such that Plaintiff would incur a detriment and confer a benefit upon Defendants.

112.    As a direct and proximate result of Defendants SBLI, LegacyShield, & Goldman's false promises and representations, Plaintiff has been damaged thereby, and Defendants are responsible to Plaintiff for their damages.


## FOURTH CAUSE OF ACTION

(Conversion- Defendants SBLI and LegacyShield)

113.    Plaintiff repeats each and every allegation of the foregoing as if same were set forth herein.

114.    Plaintiff entered into a formal business relationship with Defendants SBLI and LegacyShield whereby Defendants SBLI and LegacyShield agreed to pay Plaintiff certain revenue and commissions derived from the sale of estate service plans.

115.    Plaintiff is entitled to hundreds of thousands of dollars in revenue and commissions from Defendants SBLI and LegacyShield that Plaintiff earned from the sale of estate planning service plans.

116.    Defendants SBLI and LegacyShield have intentionally and illegally withheld hundreds of thousands of dollars in earned revenue and commissions from the sale of estate planning service plans.

117.    Defendants SBLI and LegacyShield have intentionally and illegally withheld hundreds of thousands of dollars in earned revenue and commissions from Plaintiff for Defendant's own use and benefit.

118.    As a direct and proximate result of the foregoing, Plaintiff has been damaged thereby, and Defendants SBLI and LegacyShield are responsible to Plaintiff for their damages.

## FIFTH CAUSE OF ACTION

### (Unjust Enrichment-Defendants SBLI and LegacyShield)

119.    Plaintiff repeats each and every allegation of the foregoing as if same were set forth herein.

120.    Plaintiff entered into a formal business relationship with Defendants SBLI and LegacyShield whereby Defendants agreed to pay Plaintiff certain revenue and commissions derived from the sale of estate service plans.

121.    Plaintiff is entitled to hundreds of thousands of dollars in revenue and commissions from Defendants SBLI and LegacyShield that Plaintiff earned from the sale of estate planning services plans.

122.    Defendants SBLI and LegacyShield knew or should have known that they owed Plaintiff hundreds of thousands of dollars in revenue and commissions that Plaintiff earned from the sale of estate planning services plans.

123.    Defendants SBLI and LegacyShield have been unjustly enriched by withholding and enjoying the hundreds of thousands of dollars of revenue and commissions owed to Plaintiff through the sale of estate planning services plans.

124.    As a result of Defendants SBLI and LegacyShield's unjust enrichment, Plaintiff has been damaged thereby, Defendants are responsible to Plaintiff for their damages.

## SIXTH CAUSE OF ACTION

(Breach of Covenant of Good Faith and Fair Dealing-Defendants SBLI and LegacyShield)

125.    Plaintiff repeats each and every allegation of the foregoing as if same were set forth herein.

126.    Plaintiff entered to a Master Services Agreement and Mutual Non-disclosure Agreement ("Contracts") with Defendants SBLI and LegacyShield.

127.    Implied in each and every contract, including Plaintiff's and Defendants SBLI's and LegacyShield's Contract is a covenant of good faith and fair dealing.

128.    Defendants SBLI and LegacyShield breached the implied covenant of good faith and fair dealing by acting in such a manner as to deprive Plaintiff of the intended fruits of the contract, including but not limited to inadequately and incorrectly performing accounting and payment processing so as to avoid paying monies justly due to Plaintiff, improperly and inaccurately processing client payments such that payments due to Plaintiff were delayed and/or reduced, and withholding accurate information concerning client accounts and services so that Plaintiff could not itself discover that payments were being withheld.

129.    Defendants SBLI and LegacyShield's conduct was intentional and committed in willful and wanton disregard for Plaintiffs' rights.

130.    As a result of Defendants SBLI and LegacyShield's breach of the implied covenant of good faith and fair dealing, Plaintiffs were damaged thereby, and Defendant SBLI and LegacyShield are responsible for Plaintiff's damages.

## SEVENTH CAUSE OF ACTION

(Breach of Contract-Defendants Garcia & Sahni, LLP, Lorna Garcia, & Vineet Sahni)

131.    Plaintiff repeats each and every allegation of the foregoing as if same were set forth herein.

132.    Inter Vivos, PLLC entered into written Independent Contractor Attorney Agreement with Defendant Garcia & Sahni, LLP.

133.    Plaintiff is an intended third-party beneficiary of the Independent Contractor Attorney Agreement.

134.    The Independent Contractor Attorney Agreement contains certain provisions concerning non-circumvention and non-solicitation.

135.    Defendants Garcia & Sahni, LLP, Lorna Garcia, & Vineet Sahni have knowingly and deliberately solicited Referral Contacts in violation of the Independent Contractor Attorney Agreement.

136.    Defendants Garcia & Sahni, LLP, Lorna Garcia, & Vineet Sahni have knowingly and deliberately circumvented Inter Vivos, PLLC and Plaintiff by marketing directly to and obtaining business from the attorney network established by Plaintiff and Inter Vivos, PLLC, in violation of the Independent Contractor Attorney Agreement.

137.    As a direct and proximate result of the foregoing, Plaintiff has been damaged thereby, and Defendants are responsible to Plaintiff for their damages.

## EIGHTH CAUSE OF ACTION

(Breach of Covenant of Good Faith and Fair Dealing -Defendants Garcia & Sahni, LLP, Lorna Garcia, & Vineet Sahni)

138.    Plaintiff repeats each and every allegation of the foregoing as if same were set forth herein.

139.    Inter Vivos, PLLC entered into written Independent Contractor Attorney Agreement with Defendant Garcia & Sahni, LLP.

140.    Plaintiff is an intended third-party beneficiary of the Independent Contractor Attorney Agreement.

141.    Implied in each and every contract is a covenant of good faith and fair dealing.

142.    Defendants Garcia & Sahni, LLP, Lorna Garcia, & Vineet Sahni breached the implied covenant of good faith and fair dealing by failing to abide by their contractual obligations, including but not limited to utilizing their access to Plaintiff's database and information to circumvent Plaintiff's rights and business opportunities.

143.    Defendants Garcia & Sahni, LLP, Lorna Garcia, & Vineet Sahni's conduct was intentional and committed in willful and wanton disregard for Plaintiffs' rights.

144.    As a result of Defendants Garcia & Sahni, LLP, Lorna Garcia, & Vineet Sahni's breach of the implied covenant of good faith and fair dealing, Plaintiffs were damaged thereby, and Defendants Garcia & Sahni, LLP, Lorna Garcia, & Vineet Sahni are responsible for Plaintiff's damages.

## NINTH CAUSE OF ACTION

(Tortious Interference with Contractual Relations -All Defendants)

145.    Plaintiff repeats each and every allegation of the foregoing as if same were set forth herein.

146.    Plaintiff had valid and enforceable contracts between itself and third parties, specifically with the attorneys, agents, and other individuals and companies involved in providing the estate planning services which Plaintiff offered.

147.    Defendants had knowledge of Plaintiff's contracts with this third parties, as demonstrated by Defendants' participation in Plaintiff's business and usage and marketing of Plaintiff's products and services.

148.    Defendants acted intentionally to interfere with these contractual relationships by engaging in unlawful, wrongful, and misleading marketing which purported to be on behalf of

Plaintiff but which was actually on behalf of Defendants, by circumventing Plaintiff to directly contact such third parties as part of an effort to cut Plaintiff out of the business, and other wrongful conduct.

149.    Defendants' actions were taken in violation of Defendants' various and respective contractual obligations and by misusing Plaintiff's proprietary information and materials, through which Defendants learned the identities and contact information of the third parties.

150.    As a direct and proximate result of Defendants conduct as alleged herein, Plaintiff suffered harm when the third parties with whom Plaintiff had previously contracted ceased to do business with Plaintiff and conducted business activities with Defendants. Plaintiff was harmed by Defendants' misconduct and Defendants are responsible for Plaintiff's damages.

## TENTH CAUSE OF ACTION

(Tortious Interference with Prospective Economic Relations -All Defendants)

151.    Plaintiff repeats each and every allegation of the foregoing as if same were set forth herein.

152.    Plaintiff had developed relationships with third parties for the marketing and provision of services offered by Plaintiff in the ordinary course of its business.

153.    Plaintiff had a reasonable expectation of entering into future business relationships with these and other third parties, which would have resulted in an economic benefit to Plaintiff.

154.    Defendants intentionally interfered with these prospective relationships by engaging in wrongful and misleading marketing which purported to be on behalf of Plaintiff, but which was actually on behalf of Defendants, by circumventing Plaintiff to directly contact such third parties as part of an effort to cut Plaintiff out of the business, and other wrongful conduct.

155.    Defendants' actions were taken in violation of Defendants' various and respective contractual obligations and by misusing Plaintiff's proprietary information and materials, through which Defendants learned the identities and contact information of the third parties.

156.    As a direct and proximate result of Defendants conduct as alleged herein, Plaintiff suffered harm when the third parties with whom Plaintiff had an expectation of business relationships did not proceed to form business relationships with Plaintiff and instead conducted business activities with Defendants. Plaintiff was harmed by Defendants' misconduct and Defendants are responsible for Plaintiff's damages.

## **ELEVENTH CAUSE OF ACTION**

### (Civil Conspiracy -All Defendants)

157.    Plaintiff repeats each and every allegation of the foregoing as if same were set forth herein.

158.    Defendants agreed and cooperated in their efforts to seize Plaintiff's business for their own.

159.    Defendants formed an agreement to act in coordination in their efforts to procure Plaintiff's business and take it for themselves.

160.    Defendants acted with the intent to cooperate for their mutual benefit at the expense of Plaintiff.

161.    Defendants' purpose was to achieve an unlawful or wrongful act, specifically the appropriation of Plaintiff's business through the misuse of Plaintiff's information, network, business model, and other proprietary data.

162.    Defendants committed multiple overt acts in furtherance of their conspiracy, including the failure to pay monies to which Plaintiff was entitled, the misuse of Plaintiff's information for deceptive marketing, and the making of false representations to Plaintiffs.

163.    As a direct and proximate result of Defendants' actions and misconduct, Plaintiffs were damaged thereby, and Defendants are responsible for Plaintiff's damages.

## PRAYER FOR RELIEF

1.    Awarding Plaintiff compensatory in an amount to be proven at trial, but in no event less than $550,000 representing the monies which are due and owing but still unpaid by Defendants pursuant to Plaintiff's contract with LegacyShield/SBLI.

2.    Awarding Plaintiff consequential damages in an amount to be proven at trial, but in no event less than $9,000,000 representing interest, fees, penalties, and other costs incurred as a result of Plaintiff's inability to pay its obligations due to Defendants' non-payment and the loss of business value resulting therefrom.

3.    Awarding Plaintiff incidental damages in an amount to be proven at trial.

4.    Awarding Plaintiff punitive damages in an amount to be proven at trial, but in no event less than $40,000,000 for Defendants' deliberately deceitful misconduct and to deter similar actions in the future.

5.    Awarding Plaintiff attorneys' fees, costs, and interest.

6.    Awarding Plaintiff such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues subject to trial.

DATED:      November 26, 2024                JOHNSTUN LAW, LLC

                                            /s/Aaron Johnstun
                                            Aaron Johnstun
                                            *Counsel to LSPN PRO, LLC*