IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| LSPN PRO, LLC,<br><br>       Plaintiff,<br><br>v.<br><br>LEGACYSHIELD SOLUTIONS, INC.; THE SAVINGS BANK MUTUAL LIFE INSURANCE COMPANY OF MASSACHUSETTS; LEWIS GOLDMAN; RAY RAMIREZ; GARCIA & SAHNI, LLC; LORNA GARCIA; and VINEET SAHNI,<br><br>       Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:24-cv-00883-RJS-DAO<br><br>Chief Judge Robert J. Shelby<br><br>Magistrate Judge Daphne A. Oberg |

Now before the court is Defendants Lewis Goldman, Ray Ramirez, Lorna Garcia, Vineet Sahni, and Garcia & Sahni, LLP's (collectively, Individual Defendants) Motion to Dismiss for Lack of Personal Jurisdiction.[1]  The Individual Defendants also join Defendants LegacyShield Solutions, Inc. and The Savings Bank Mutual Life Insurance Company of Massachusetts (SBLI)'s Motion to Transfer Venue.[2]  Both personal jurisdiction and venue are privileges that may be waived.[3]  The court concludes that, because the forum selection clause encompasses all claims and Defendants consent to jurisdiction and venue in the District of Massachusetts, transfer is appropriate.  As Plaintiff acknowledges, maintaining litigation on the same claims in multiple

---

[1] Dkt. 33, *Defendants' Lewis Goldman, Ray Ramirez, Garcia & Sahni, LLC, Lorna Garcia, and Vineet Sahni's Motion to Dismiss for Lack of Personal Jurisdiction* (*Motion to Dismiss*).  The Second Amended Complaint and the briefing refer to Garcia & Sahni's entity interchangeably as both LLC and LLP.  The court refers to the entity as Garcia & Sahni LLP in accordance with the company's website.  *See* Dkt. 43, *Second Amended Complaint* (*SAC*); *Garcia & Sahni LLP*, https://perma.cc/6LHW-NAKU.

[2] Dkt. 34, *Defendants' Notice of Motion and Motion to Transfer Venue Under 28 U.S.C. Section 1404(A); Memorandum of Points and Authorities in Support Thereof* (*Motion to Transfer Venue*).

[3] *See Leroy v. Great W. United Corp.*, 433 U.S. 173, 180 (1979).

districts is unduly burdensome and inefficient.  Accordingly, for reasons more fully explained below, the court GRANTS Defendants' Motion to Transfer Venue and DENIES as moot the Individual Defendants' Motion to Dismiss.

## FACTUAL BACKGROUND[4]

Plaintiff LSPN Pro, LLC is a Utah limited liability company that provides attorney services to individuals and businesses for estate planning.[5]  As part of its business model, LSPN contracted with the law firm Inter Vivos, PLLC to provide legal services for LSPN's clients.[6]  To provide these services, LSPN and Inter Vivos formed a network of legal service providers by contracting with other law firms and attorneys.[7]

LegacyShield is a Delaware limited liability company that assists individuals and businesses in obtaining insurance and financial and estate-planning services.[8]  LSPN partnered with LegacyShield to assist with marketing and pricing a do-it-yourself software for estate planning.[9]  Initially, LSPN and LegacyShield had a productive working relationship,[10] but LegacyShield's sales later declined, the parties' relationship cooled, and LSPN pursued relationships with other companies.[11]

---

[4] The following facts are set forth as alleged in the SAC and the parties briefing, including the attached exhibits, with any factual disputes resolved in Plaintiff's favor.  *See Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010) ("Without discovery and a record on jurisdiction, this court must resolve all factual disputes in the plaintiff's favor.  Where the plaintiff's factual allegations are not directly controverted, they are taken as true for purposes of determining jurisdiction.") (cleaned up).

[5] *SAC* ¶¶ 10–12, 34–35.

[6] *Id.* ¶ 36.

[7] *Id.* ¶¶ 37–38, 95.

[8] *Id.* ¶ 40.

[9] *Id.* ¶ 41.

[10] *Id.* ¶ 42.

[11] *Id.* ¶¶ 42–43.

In 2020 or 2021, SBLI acquired LegacyShield.[12]  SBLI is a Massachusetts corporation with the same principal place of business and directors as LegacyShield.[13]  At all relevant times, Lewis Goldman, a citizen of New York, was responsible for managing SBLI.[14]  Goldman developed a marketing strategy for SBLI in which it would offer customers an "enhanced" product and other services through "advisors."[15]  In Goldman's efforts to boost SBLI's sales, he asked another SBLI employee, Heather McKee, to facilitate reconnecting with LSPN.[16]  Goldman proposed that LSPN partner with SBLI to offer legal estate-planning services with a joint monthly payment plan.[17]

## A.  The Master Services Agreement

On September 13, 2022, LSPN and SBLI entered into a Master Services Agreement (MSA).[18]  In pertinent part, the MSA provided that LSPN was obligated to provide services to SBLI, including, but not limited to:

- Marketing Support and Promotion to WFG Agents ("Agents")[19]
- Phone support for sales and marketing to Agents
- Sell Trust Plans to . . . WFG Agents either Monthly Plan or One Time Payment [sic]
- [S]ell Trusts at a monthly cost to Agents' clients[.][20]

---

[12] *Id.* ¶¶ 18, 44.  The SAC and the parties' briefing refer to LegacyShield and SBLI both individually and together. Because SBLI acquired LegacyShield, the court refers to LegacyShield and SBLI as SBLI throughout.

[13] *Id.* ¶¶ 45–47.

[14] *Id.* ¶¶ 19, 48–55.

[15] *Id*. ¶¶ 50–51.

[16] *Id.* ¶¶ 52–53, 56.

[17] *Id.* ¶ 59.  The plan, called "Legacy 4 Life," was meant to make estate planning more affordable by allowing clients to avoid a larger one-time, up-front payment for legal services.  *Id.* ¶¶ 59–60.

[18] *Id.* ¶ 62.

[19] Neither the SAC, the attached exhibits, nor the parties' briefing define "WFG Agents."  Based on the same, the court understands WFG Agents to be SBLI sales employees or independent contractors.

[20] Dkt. 33-7, *Motion to Dismiss*, Ex. A (*MSA*).

The MSA also provided that LSPN and SBLI could inspect one another's work and performance.

For example, LSPN was required to:

> Maintain complete and accurate records relating to the provision of the Services under th[e] Agreement, in such form as LegacyShield shall approve . . . [and] allow LegacyShield or its representative to inspect and make copies of such records.[21]

Similarly, SBLI was obligated to:

> Designate one of its employees or agents to serve as its primary contact with respect to [the] Agreement.[22]

> [R]espond promptly to any reasonable requests from [LSPN] for instructions, information or approvals required by [LSPN] to provide [LegacyShield's] Services.[23]

> In the event . . . of any Security Breach . . . cooperate with [LSPN] and its . . . representatives in investigating and remediating such Security Breach . . . .[24]

> [I]nspect the work of [LSPN], at its own expense and reasonable notice, as it progresses solely for the purpose of determining whether the work [was] completed in accordance with [the] Agreement. . . .  [LSPN], at its own expense and upon reasonable notice, shall have the right to inspect the work of LegacyShield in order to determine compliance with [the] Agreement.[25]

The MSA also included a forum selection clause stating:

> Any action, litigation or proceeding of any kind whatsoever arising from or relating to [the] Agreement . . . [would] be subject to the exclusive jurisdiction and venue of the United States District Court for the District of Massachusetts or, if such court does not have subject matter jurisdiction, the courts of the Commonwealth of Massachusetts . . . .  Each Party irrevocably and unconditionally submits to the exclusive jurisdiction of such courts.[26]

---

[21] *Id.* ¶ 3.6.

[22] *Id.* ¶ 4.1.

[23] *Id.* ¶ 4.2.

[24] *Id.* ¶ 8.4.

[25] *Id.* ¶ 10.1.

[26] *Id.* ¶ 25.

The MSA further provided that the parties would divide client fees according to a fee schedule.[27]

SBLI processed the fees through SBLI's payment portal[28]; SBLI deposited client payments into

LSPN's Utah IOLTA trust account and then paid LSPN.[29]

      The same day the parties executed the MSA, they also signed a Mutual Non-Disclosure

Agreement (NDA) in which Defendants agreed to prevent disclosure, unauthorized use, or

dissemination of LSPN's confidential, proprietary information.[30]  The NDA also contained a

forum selection clause stating:

> This Agreement shall be governed by the laws of the Commonwealth of Massachusetts without regard to conflicts of laws and provisions thereof.  The parties hereby consent to the exclusive jurisdiction of the courts of Massachusetts, and stipulate that the venue for any dispute arising under this Agreement shall be in Massachusetts.[31]

### B.  Defendants' Performance

      The business relationship between the parties grew and LSPN eventually recommended

that SBLI work with Ray Ramirez, a citizen of Washington, to increase its sales.[32]  LSPN had

previously employed Ramirez as a W2 employee and then as an independent contractor.[33]

Ramirez had access to LSPN's proprietary and confidential information, including LSPN's

network of attorney providers.[34]  After LSPN and SBLI entered into the MSA, Ramirez worked

as an independent contractor for both parties,[35] and then transitioned to working full time for

---

[27] *Id.* ¶ 6, *Id.* Ex. C., *Fee Schedule for Monthly Payment Plans*.

[28] *SAC* ¶ 67.

[29] *Id.* ¶¶ 68–69.  LSPN also alleges SBLI made lump-sum payments to LSPN that were not itemized, which prohibited LSPN from monitoring SBLI's performance.  *Id.* ¶ 69.

[30] *Id.* ¶ 66; *see also* Dkt. 33-7, Ex. D, *NDA*.

[31] *NDA* ¶ 14.

[32] *SAC* ¶¶ 20, 82–84.

[33] *Id.* ¶ 80.

[34] *Id.* ¶¶ 86, 90.

[35] *Id.* ¶ 84.

SBLI.[36]  During his time as an independent contractor, Ramirez attended weekly video conferences with LSPN, Goldman, McKee, and other SBLI team members.[37]

Prior to becoming a full-time employee for SBLI, Ramirez introduced Lorna Garcia and Vineet Sahni, both citizens of California, to LSPN.[38]  Garcia and Sahni proposed a collaboration between their law firm, Garcia & Sahni LLP, and LSPN, and the parties eventually entered into an independent contractor agreement.[39]  Garcia and Sahni[40] communicated weekly with LSPN via phone, email, and/or video conferences to discuss finances, marketing, client cases, and how to best represent LSPN.[41]  Garcia and Sahni also worked with LSPN's owner as co-counsel on cases in multiple states.[42]  During LSPN's collaboration with Garcia and Sahni, Garcia and Sahni attended at least one multi-day meeting with LSPN in Utah.[43]  LSPN paid Garcia and Sahni for their services individually with funds processed through SBLI's payment portal.[44]

LSPN alleges Ramirez introduced SBLI to Garcia and Sahni, and all Defendants thereafter marketed directly to LSPN's confidential contacts and attorney network.[45]  LSPN further alleges SBLI, Garcia, and Sahni failed to make the required payments to LSPN for sales

---

[36] *Id.* ¶ 88.

[37] *Id.* ¶ 85.

[38] *Id.* ¶¶ 21–25, 93.

[39] *Id.* ¶¶ 99–100.

[40] The court refers to Lorna Garcia and Vineet Sahni in their individual capacities as "Garcia and Sahni." "Garcia & Sahni" refers to the entity Garcia & Sahni LLP.

[41] *Id.* ¶¶ 106–07.

[42] *Id.* ¶¶ 108–09.

[43] *Id.* ¶ 110.

[44] *Id.* ¶¶ 95, 111.

[45] *Id.* ¶¶ 113–19.

derived from LSPN's contacts.[46]  LSPN contends Defendants collectively circumvented LSPN's business, causing significant financial loss.[47]

On November 26, 2024, LSPN filed a Complaint[48] against Defendants asserting eleven claims: (1) breach of contract against LegacyShield and SBLI for violating the MSA[49]; (2) breach of contract against LegacyShield and SBLI for violating the NDA[50]; (3) promissory estoppel against LegacyShield, SBLI, and Goldman[51]; (4) conversion against LegacyShield and SBLI[52]; (5) unjust enrichment against LegacyShield and SBLI[53]; (6) breach of the covenant of good faith and fair dealing against LegacyShield and SBLI[54]; (7) breach of contract against Garcia & Sahni LLP, Garcia, and Sahni[55]; (8) breach of the covenant of good faith and fair dealing against Garcia & Sahni LLP, Garcia, and Sahni[56]; (9) tortious interference with contractual relations against all Defendants[57]; (10) tortious interference with prospective economic relations against all Defendants[58]; and (11) civil conspiracy against all Defendants.[59]

---

[46] *Id.*

[47] *Id.* ¶¶ 120–23.

[48] LSPN amended its Complaint twice, but the causes of action remained the same.  *Compare* Dkt. 1, *Complaint*, *with SAC.*

[49] *Id.* ¶¶ 124–37.

[50] *Id.* ¶¶ 138–46.

[51] *Id.* ¶¶ 147–56.

[52] *Id.* ¶¶ 157–65.

[53] *Id.* ¶¶ 166–71.

[54] *Id.* ¶¶ 172–77.

[55] *Id.* ¶¶ 178–84.

[56] *Id.* ¶¶ 185–91.

[57] *Id.* ¶¶ 192–97.

[58] *Id.* ¶¶ 198–203.

[59] *Id.* ¶¶ 204–11.

On February 13, 2025, the Individual Defendants filed a Motion to Dismiss for Lack of Jurisdiction and joined SBLI in a Motion to Transfer Venue.[60]  The motions are fully briefed.[61]

## LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(2), a party may move the court to dismiss a complaint for lack of personal jurisdiction.[62]  "The plaintiff bears the burden of establishing personal jurisdiction,"[63] but it "need only make a prima facie showing" in response to a motion to dismiss.[64]  Under 28 U.S.C. § 1404(a), a district court "may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."[65]  When a party files a motion to transfer to enforce a forum-selection clause, "a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer."[66]

## ANALYSIS

The Individual Defendants argue the court should dismiss all claims against them for lack of personal jurisdiction.[67]  Additionally, all Defendants move to transfer this matter to the

---

[60] *Motion to Dismiss*; *Motion to Transfer Venue.*

[61] Dkt. 45, *Plaintiff's Memorandum in Opposition of Defendants Lewis Goldman, Ray Ramirez, Garcia & Sahni, LLP, Lorna Garcia, and Vineet Sahni's Motion to Dismiss for Lack of Personal Jurisdiction* (*Motion to Dismiss Opposition*); Dkt. 48, *Individual Defendants' Reply in Support of Motion to Dismiss for Lack of Personal Jurisdiction*, (*Motion to Dismiss Reply*); Dkt. 44, *Plaintiff's Memorandum in Opposition to Defendants Motion to Transfer Venue Under Section 28 U.S.C. Section 1404(a)* (*Motion to Transfer Venue Opposition*); Dkt. 49, *Defendants' Reply in Support of Motion to Transfer Venue Under 28 U.S.C. Section 1404(A)* (*Motion to Transfer Venue Reply*).

[62] Fed. R. Civ. P. 12(b)(2).

[63] *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011).

[64] *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (citation modified).

[65] 28 U.S.C. § 1404(a).

[66] *Atlantic Marine Constr. Co., Inc. v. U.S. Dist. Court for Western Dist. of Tex.*, 571 U.S. 49, 52 (2013).

[67] *See Motion to Dismiss*.

District Court of Massachusetts pursuant to the MSA's forum selection clause.[68]  As the

Supreme Court has explained:

> The question of personal jurisdiction, which goes to the court's power to exercise control over the parties, is typically decided in advance of venue, which is primarily a matter of choosing a convenient forum.  On the other hand, neither personal jurisdiction nor venue is fundamentally preliminary in the sense that subject-matter jurisdiction is, for both are personal privileges of the defendant, rather than absolute strictures on the court, and both may be waived by the parties.  Accordingly, when there is a sound prudential justification for doing so, we conclude that a court may reverse the normal order of considering personal jurisdiction and venue.[69]

Here, the court concludes it is prudent to consider venue before personal jurisdiction.

Defendants argue the court should transfer this action to the District of Massachusetts

pursuant to 28 U.S.C. § 1404(a) to enforce the forum selection clauses in the MSA and NDA.[70]

LSPN contends transfer is not appropriate because the Individual Defendants are not signatories

to the MSA and NDA, and maintaining litigation in both states would be unduly burdensome and

"effectively deny [LSPN] its day in court."[71]  Additionally, LSPN argues SBLI must

demonstrate the case could have been filed in Massachusetts for transfer to be proper and SBLI

has failed to do this.[72]

Section 1404(a) grants the district court discretion "to adjudicate motions for transfer

according to an individualized, case-by-case consideration of convenience and fairness."[73]  In

---

[68] *Motion to Transfer Venue* at 1–2.  Defendants purport to preserve their jurisdictional defense in the Motion to Transfer Venue and request a transfer "only as to those Individual Defendants where personal jurisdiction has been established."  *Id.* at 2.

[69] *Leroy*, 433 U.S. at 180 (1979) (cleaned up); *see also Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 431 (2007) (stating "a federal court has leeway to choose among threshold grounds for denying audience to a case on the merits") (cleaned up); *accord Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 465 (1962) (noting nothing in the venue statute 28 U.S.C. § 1406 "indicates the operation of the section was intended to be limited to actions in which the transferring court has personal jurisdiction over the defendants").

[70] *See generally*, *Motion to Transfer Venue* at 3.

[71] *Motion to Transfer Venue Opposition* at 2.

[72] *Id.* at 10–11.

[73] *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

considering whether transfer is appropriate, district courts ordinarily weigh certain factors[74] to determine whether "a transfer would serve the convenience of parties and witnesses and otherwise promote the interest of justice."[75]  However, when there is a valid forum selection clause, district courts "adjust their usual § 1404(a) analysis in three ways": (1) "the plaintiff's choice of forum merits no weight"; (2) the court may only consider "arguments about public-interest factors"; and (3) transfer does not "carry with it the original venue's choice-of-law rules."[76]

Here, the court accords no weight to LSPN's preference for the District of Utah.  The public interest factors weigh in favor of transfer to Massachusetts because Massachusetts has an interest in having Massachusetts controversies decided in that forum, and Massachusetts law governs the action.[77]  Additionally, LSPN cites *Hoffman v. Blaski*[78] and *Chrysler Credit Corp. v. Country Chrysler, Inc.*[79] to argue "the Individual Defendants must show that it would have been

---

[74] These factors include: (1) "the plaintiff's choice of forum"; (2) "the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses"; (3) the cost of making the necessary proof"; (4) "questions as to the enforceability of a judgment if one is obtained"; (5) relative advantages and obstacles to a fair trial"; (6) "difficulties that may arise from congested dockets"; (7) "the possibility of the existence of questions arising in the area of conflict of laws"; (8) "the advantage of having a local court determine questions of local law"; and (9) "all other considerations of a practical nature that make a trial easy, expeditious and economical."  *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991); *accord Atlantic Marine*, 571 U.S. at 62 n.6 (listing similar factors as they relate to the parties' private interests and public interests).

[75] *Atlantic Marine*, 571 U.S. at 62–63 (cleaned up).

[76] *Id.* at 63–65; *see also id.* at 62 n.6 (stating public-interest factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law") (cleaned up); *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1532 (10th Cir. 1996) ("Generally, a federal trial court sitting in diversity applies the forum state's choice of law.  However, where a case is transferred from one forum to another under 28 U.S.C. § 1404(a), . . . then the transferee court must follow the choice of law rules of the transferor court.") (cleaned up).

[77] *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981); MSA ¶ 24 (stating all litigation arising out of or relating to the MSA are governed by the laws of Massachusetts); NDA ¶ 14 (same).

[78] 363 U.S. 335 (1960).

[79] 928 F.2d 1509 (10th Cir. 1991).

proper for LSPN to file in Massachusetts at the time of filing."[80]  But *Hoffman* and *Chrysler* were both decided when § 1404(a) included this requirement[81]; § 1404(a) was amended in 2012 and no longer requires this showing.[82]  Rather, transfer is appropriate to a district in which the action might have been brought "*or to any district or division to which all parties have consented.*"[83]

LSPN does not argue the forum selection clause in the MSA is unenforceable.[84]  Indeed, LSPN relies on the MSA in asserting its claims.[85]  The same is true of the NDA.[86]  All Defendants, including the Individual Defendants, have consented to litigating this case in Massachusetts.[87]  By signing the MSA, LSPN agreed that "[a]ny action, litigation or proceeding *of any kind whatsoever arising from or relating to [the] Agreement* . . . [would] be subject to the exclusive jurisdiction and venue of the United States District Court for the District of Massachusetts."[88]  Similarly, the NDA states "[t]he parties hereby consent to the exclusive jurisdiction of the courts of Massachusetts, and stipulate that the venue for *any dispute arising under this [NDA] shall be in Massachusetts.*"[89]

---

[80] *Motion to Transfer Venue Opposition* at 10.

[81] *Hoffman*, 363 U.S. at 336 (quoting 1404(a) as stating: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought"); *Chrysler Credit Corp.*, 928 F.2d at 1515 (same).

[82] *Compare* 28 U.S.C. § 1404(a) (2011) ("For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."), *with* 28 U.S.C. § 1404(a) (2012) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.").

[83] 28 U.S.C. 1404(a) (emphasis added).

[84] *See generally*, *SAC*; *Motion to Dismiss Opposition*; *Motion to Transfer Venue Opposition*.

[85] *See SAC* ¶¶ 62–66, 124–46, 172–91.

[86] *See id.* ¶¶ 138–56, 173–77.

[87] *Motion to Transfer Venue* at 1–3.

[88] MSA ¶ 25 (emphasis added).

[89] NDA ¶ 14 (emphasis added).

Defendants argue the court should transfer the case to the District of Massachusetts because all of LSPN's alleged claims arise from or relate to the MSA and NDA and both state the courts of Massachusetts have exclusive jurisdiction and the parties stipulate to that venue.[90] The court agrees.

LSPN does not dispute that all of its claims relate to the MSA and NDA it entered into with SBLI.  Indeed, LSPN alleges (1) Goldman and Ramirez were both employed by SBLI, (2) Garcia, Sahni, and Garcia & Sahni LLP partnered with SBLI, and (3) all Defendants coordinated together in marketing to LSPN's attorney network and withholding revenues in violation of the MSA and NDA.[91]  Additionally, LSPN does not respond to Defendants' argument that the broad forum selection clause governs all claims related to the MSA and NDA, including the claims against the Individual Defendants.[92]

Four of LSPN's claims reference the MSA and NDA directly,[93] and the remaining claims all involve contracts between LSPN and Defendants—the independent contractor agreements with the Individual Defendants and the MSA and NDA for SBLI.[94]  As Defendants point out, each of the independent contractor agreements are also related to the MSA and NDA.  LSPN developed a network of attorneys to provide legal services to LSPN's clients.[95]  LSPN entered into the MSA and NDA with SBLI to split revenues earned from SBLI's agents marketing to

---

[90] *See Motion to Transfer* at 4 ("In its Amended Complaint, Plaintiff purports to allege eleven causes of action, the first cause of action for breach of the MSA, the second for breach of the NDA, and the remaining nine causes of action arising out of the relationships created by the MSA and NDA and the conduct instituted as a result of the NDA and MSA.").

[91] *Motion to Transfer Venue Opposition* at 3–4.

[92] *See id*. at 6–12.

[93] Claims 1–3 and 6.  *See id.* ¶¶ 124–56; 172–77.

[94] Claims 4–5 and 7–11.  *See id.* ¶¶ 157–71; 178–211.

[95] *Motion to Transfer Venue* at 5.

12

LSPN's attorney network.[96]  LSPN's contracts with the Individual Defendants directly implicated the MSA and/or the NDA.[97]  Specifically, LSPN alleges Ramirez coordinated with Garcia, Sahni, and Garcia & Sahni LLP to market to LSPN's attorney network and circumvent LSPN in the resulting sales in violation of the NDA.[98]

The Supreme Court has stated that when a party files a motion to transfer venue to enforce a forum-selection clause, "a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer."[99]  LSPN has not presented any extraordinary circumstances to justify denying transfer.  Further, as LSPN acknowledges, maintaining litigation on the same claims in both the District of Utah and the District of Massachusetts is burdensome to LSPN and may lead to unnecessary delays.[100]  Additionally, the "general principle is to avoid duplicative litigation" between federal district courts.[101]  Maintaining multiple suits does not serve judicial efficiency, and may result in duplicative discovery, piecemeal litigation, and inconsistent outcomes.[102]  Accordingly, the court

---

[96] *Id.* at 6–8.

[97] *Id.* at 14.

[98] *Id.* "[SBLI], through its sales representative defendant Ramirez, launched a marketing effort using [LSPN's] proprietary information in violation of the NDA.  Defendants Garcia, Sahni, Garcia & Sahni, LLP, and Ramirez, with coordination and support of [SBLI] violated the Vivos NDA, by marketing to [LSPN's] contacts.") (cleaned up); *SEC* ¶ 8 ("Defendants Garcia & Sahni, LLP and their principals, attorneys Lorna Garcia and Vineet Sahni, conspired with [SBLI] and their agents Defendants Lewis Goldman and Ray Ramirez to circumvent [LSPN] interfere with [LSPN's] business relationships, and appropriate [LSPN']s business for themselves and their coconspirators.").

[99] *Atlantic Marine Constr. Co., Inc.*, 571 U.S. at 52.

[100] *Motion to Transfer Venue Opposition* at 2.

[101] *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).

[102] *In re Family Dollar Stores, Inc., Wage & Hour Emp't Practices Litig.*, 545 F.Supp.2d 1363, 1364–65 (U.S. Jud. Pan. Mult. Lit. 2008) (stating that it is favored to centralize litigation in cases arising out of similar allegations and sharing factual questions to "serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation," "eliminate duplicative discovery," "avoid inconsistent pretrial rulings," "and conserve the resources of the parties, their counsel, and the judiciary").

concludes that transferring the action as to all Defendants to the District of Massachusetts is appropriate.

Having concluded that transferring this action to the District of Massachusetts is appropriate, the court need not address the Individual Defendants' Motion to Dismiss for lack of personal jurisdiction.[103]

## CONCLUSION

For the reasons stated above, the court GRANTS Defendants' Motion to Transfer[104] and DENIES as moot Defendants' Motion to Dismiss.[105]  The court directs the Clerk of Court to transfer this case to the District of Massachusetts.


SO ORDERED this 11th of September 2025.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge

---

[103] *Sinochem Intern. Co. Ltd.*, 549 U.S. at 431–32 (stating "a federal court has leeway to choose among threshold grounds for denying audience to a case on the merits"); *Wardell v. Am. Dairy Goat Ass'n*, No. 21-CV-01186-PAB-NRN, 2022 WL 375577, at *4 (D. Colo. Feb. 8, 2022) ("In light of the Court's conclusion that convenience and interests of justice justify a transfer of [venue], . . . the Court finds it appropriate to pretermit the matter of personal jurisdiction") (cleaned up).

[104] Dkt. 34.

[105] Dkt. 33.